# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ARLANXEO CANADA, Inc., | : |
| | : |
| *Plaintiff*, | : CIVIL ACTION NO. |
| | : 1:21-cv-01843 YK |
| | : |
| v. | : |
| | : |
| KAYDON RING & SEAL, INC., | : |
| | : (Judge Kane) |
| *Defendant.* | : |
| | : |

## DEFENDANT KAYDON RING & SEAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE THE EXPERT REPORT, TESTIMONY, AND OPINIONS OF DR. ITZHAK GREEN

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................1

II.    FACTUAL BACKGROUND...........................................................4

III.   STATEMENT OF QUESTION INVOLVED.................................9

IV.   ARGUMENT................................................................................9

      A.    Legal Standard.......................................................................9

      B.    Dr. Green's Opinions Concerning the Root Cause of the
          Compressor Failures Should be Precluded Because They Are
          Not the Product of Reliable Principles and Methods and Are
          Not Based on Any Specialized Knowledge ......................................11

      C.    Dr. Green's Opinions Concerning the Standard of Care
          Required and Expected of a Reasonable Manufacturer Should
          be Precluded Because He is Not Qualified to Provide Such
          Opinions, and Failed to Apply Any Reliable Methodology to
          Reach Such Opinions .......................................................16

V.    CONCLUSION............................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124 (M.D. Pa. 2015) ...............................10, 17

*Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-24277-
    CIV, 2017 U.S. Dist. LEXIS 91522 (S.D. Fla. June 12, 2017) .........................12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ......................... 2, 9-11

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ........................................ 10-11

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...........................................2, 9

*In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717 (3d Cir. 1994) .......... 10, 13-14, 17-18

*Wood v. Showers*, 822 F. App'x 122 (3d Cir. 2020) ...................................................2

*Yazujian v. PetSmart*, 729 F. App'x 213 (3d Cir. 2018) ........................................17

**Federal Statutes and Rules of Court**

Federal Rule of Evidence 702 ........................................................................ 9-10, 17

**Other Authorities**

What Are Common Root Cause Analysis (RCA) Tools?, 6 Sigma US,
    March 3rd, 2017, *available at* https://www.6sigma.us/etc/what-are-
    common-root-cause-analysis-rca-tools/ (last accessed June 5,
    2024) ................................................................................................................13

Defendant Kaydon Ring & Seal, Inc. ("Kaydon"), by and through undersigned counsel, moves to preclude from trial and the record the report, testimony, and opinions of Plaintiff, Arlanxeo Canada, Inc.'s ("Plaintiff" or "Arlanxeo") expert witness Dr. Itzhak Green.

## I.     INTRODUCTION

The crux of Arlanxeo's claim is that, despite Kaydon's seals working in Arlanxeo's compressors without failure since 1981, the ten (10) compressor failures that occurred immediately following a 2019 major compressor overhaul was not the result of any issues with the overhaul, but rather from Kaydon's unchanged seal design that had worked flawlessly for nearly forty (40) years prior.[1]  Arlanxeo has proffered Dr. Green to opine on two issues: (1) the root cause of the ten (10) Arlanxeo compressor failures; and (2) whether Kaydon breached the standard of care required and expected of a reasonable manufacturer.  However, Dr. Green's opinions are wholly unreliable, **because he admittedly did not perform a root cause analysis for the failures**.  Further, Dr. Green – a lifelong academic having never been employed by a manufacturer – has no experience, training, or specialized

---

[1] Arlanxeo operates a butyl rubber manufacturing facility in Sarnia, Canada, which utilizes several large compressors in the manufacturing process.  Two compressors are at issue here – the C2 and C3 compressors – which failed ten (10) times following the 2019 major overhaul, and which allegedly resulted in the manufacturing process shutting down for a certain period of time.

knowledge to qualify him to opine on the standard of care required and expected of a "reasonable manufacturer."  Dr. Green's opinions on the root cause of the failures goes directly to the heart of this case.  His opinions are both unreliable and unqualified.

"Evaluating the reliability of an expert's methodology is not a credibility determination but a critical gatekeeping function for judges — not juries — to perform."  *Wood v. Showers*, 822 F. App'x 122, 125 (3d Cir. 2020) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The reliability of an expert's methodology must be testable, peer-reviewed, generally accepted, and possess a known rate of error.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993).  Here, Dr. Green's purported "methodology" meets none of these factors. Indeed, Dr. Green admitted at his deposition that **he did not conduct a root cause analysis for any of the failures**.  Moreover, when asked for his methodology several times at his deposition, Dr. Green merely stated that he "looked at the [seal] design" and looked at "the reports from the root cause analysis by Siemens and the other companies and [he] concentrated on the seals."  Green Tr. 101:11-102:12.  Dr. Green also testified that he was unable to conduct his "typical" root cause analysis because he did not have the proper information.  Dr. Green's opinions are simply not based upon any methodology, let alone a reliable one, and will be unhelpful to the trier of fact.

Dr. Green has spent his entire career as a professor teaching about seal design. Accordingly, just as a hammer sees everything as a nail, Dr. Green sees every failure as a seal problem.  Arlanxeo's compressors failed ten times.  Dr. Green admits that he did not analyze each or any of the failures.  Dr. Green admits that he did not see the compressor while in operation.  Dr. Green admits that he did not inspect the compressor nor each of the failed seals.  Dr. Green admits that he failed to consider a long list of potential causes of the failures – except for the Kaydon seals, of course. Instead, Dr. Green reviewed a few root cause analyses conducted by ***other*** individuals, focused solely on what he knows (seals), and reached an opinion that the seals should have been designed differently and therefore the seals were the root cause of all the failures.  His root cause analysis "methodology" is not only unreliable, but it is non-existent. Furthermore, if indeed Arlanxeo's claims are based upon a negligent design of the seals, they were designed approximately 40 years ago and would be barred by the statute of limitation.

In addition, Dr. Green opines on the "standard of care required and expected of a reasonable manufacturer."  Green Report, para. 134(f). In his forty years since graduating college, Dr. Green has spent his entire career in academia and has never been employed by a manufacturer.  He has no training, formal education, or experience to qualify him as an expert witness to opine on the standard of care expected or required of a "reasonable manufacturer."

3

Dr. Green's opinions, reports, and testimony are unreliable and unqualified and therefore should be excluded from trial and the record in this matter.

## II.   **FACTUAL BACKGROUND**

Arlanxeo claims that Kaydon's seals caused Arlanxeo's compressors to fail on ten occasions, immediately following significant work done to the compressors by Arlanxeo and Siemens, and despite the Kaydon seals working perfectly fine for the entire 40-year life of the compressors. Arlanxeo hired several consultants to conduct root cause analyses during the failures – and not one of them was able to reach a definitive cause. Green Tr. 87:2-9. As set forth in the Expert Report of Kaydon's expert witness, Dr. Richard Klopp, Arlanxeo's compressors are comprised of many components, each of which may have been the root cause of the failures. Dkt. No. 41 ("Klopp Report"), at Table 3.

Arlanxeo hired Dr. Green for purposes of this lawsuit to opine that Kaydon's seal design was the cause of all ten of the compressor failures following the major overhaul. On October 27, 2023, Arlanxeo served the opening report from its proffered expert witness, Dr. Itzhak Green (the "Green Report"). A true and correct copy of the Green Report is attached to the Motion to Preclude Itzhak Green as Exhibit A, Dkt. No. 43. Dr. Green states that his Report is intended "to assist the Parties and the Court to understand the cause of the Compressor seal failures." Green Report, at para. 23. Dr. Green states that his "fields of expertise include

Contact Mechanics, Tribology (Friction, Lubrication, and Wear), Rotordynamics,

Dynamics and Vibrations, Diagnostics and Prognostics, the Finite-Element Method,

Viscoelasticity, and Machine Design Elements (Springs, Bearings, Shafts, Fatigue,

Fracture Mechanics, Gears (AGMA Compliance), Clutches, Breaks, Flywheels, and

Seals - static and dynamic)." *Id*. at para. 27.  Nowhere in his Report does Dr. Green

state that his field of expertise includes root cause analysis of a compressor failure

or the standard of care of a reasonable manufacturer.

Kaydon then served the expert report of its root cause analysis engineering

expert witness, Dr. Richard Klopp, which set forth all of the deficiencies and

unreliability of Dr. Green's opinions.  Dkt. No. 41.  In reply, on February 2, 2024,

Arlanxeo served a report from Dr. Green, which mostly engaged in *ad hominem*

attacks against Dr. Klopp (the "Green Reply").  A true and correct copy of the Green

Reply is attached to the Motion to Preclude Itzhak Green as Exhibit B, Dkt. No. 43.

In Dr. Green's Reports, he concludes that the Kaydon seal design should have

been designed differently, and therefore, it was the cause of Arlanxeo compressor

failures.  Dr. Green states that to reach his conclusion, he reviewed a few root cause

analyses from third party individuals and from Kaydon – none of which reach any

definitive conclusion on root cause – as well as analyzed the design of the Kaydon

seal.  The Kaydon seals at issue in this case were designed in 1981 specifically to be

used in the C2 and C3 compressors, and were manufactured by Kaydon and then

sold to the compressor manufacturer – DeLaval, a predecessor and now "business entity of Siemens Inc."  Green Report, ¶¶ 50-52.

On March 13, 2024, Kaydon took the deposition of Dr. Green, in which Kaydon's counsel attempted to obtain an understanding of Dr. Green's methodology for his purported root cause analysis.  A true and correct copy of certain excerpts from the March 13, 2024, deposition transcript of Dr. Itzhak Green is attached hereto as Exhibit C (the "Green Tr.").

Dr. Green confirmed that he did not conduct a root cause analysis for each or any of the ten failures:

> Q.  Okay. But my question is, did you analyze and conduct a root cause analysis for the second seal failure in the C2?
>
> MR. LEONELLI:  Objection to form. Go ahead.
>
> THE WITNESS:  No.  I have not done an analysis of the second seal failure, no. The answer is no.
>
> MR. RUDOWITZ:  Okay.  And you did not analyze individually each seal failure; correct?
>
> A.  That's correct.

Green Tr., 81:3-16.

Dr. Green also testified as to what he did (or did not do) in reaching his conclusion on the cause of the failures.  Dr. Green testified that he visited the facility only once, and during that visit the C2 compressor was not "in an operational state," and that he only was able to physically look at two Kaydon original seals (rather

than all ten seals that failed), was unable to take any measurements of those seals, and saw no "physical evidence from [his] inspection that led [him] to believe that the Kaydon seals were not fit for service."  Green Tr., 52:2-54:7, 59:1-20.  Indeed, Dr. Green testified that he did not know whether the Kaydon seals he viewed had even failed or in what compressor they were installed.  Green Tr., 54:7-17.  When Dr. Green visited Arlanxeo's facilities, the C2 compressor, whose failures are at issue in this case, had already been taken out of operation and replaced with a new compressor, and Dr. Green did not inspect any of the accessories or components of the C2 compressor at issue.  Green Tr., 59:21-62:13.  Dr. Green confirmed that he never witnessed a failure and never inspected a compressor prior to and after a failure.  Green Tr. 131:7-15.

Dr. Green confirmed that, in his analysis, he did not consider many different potential causes of the failures.  The following are only examples of the many potential causes that Dr. Green did not consider:

- The Fall 2019 major overhaul and machining conducted on the C2 compressor's casing.  Green Tr. 115:21-116:18.
- The different vibration responses on the different ends of the compressor.  Green Tr. 118:11-119:9.
- Potential seal and rotor misalignment – he did not conduct a rotordynamic analysis.  Green Tr. 119:10-120:3.
- Differential oil pressure across the seal at the time of each failure.  Green Tr., 65:1-17.
- Contamination in the oil supply.  Green Tr. 121:20-122:18.
- The minimum sheer rate in the oil film in the seal at the time of each failure.  Green Tr., 65:18-66:9.

- Oil temperature in the bushing seal at the time of each failure.  Green Tr. 66:11-67:2.
- The actual seal's shoulder surface speed relative to the bushing seal at the time of each failure.  Green Tr. 67:4-13.
- Whether gas pressure was introduced prior to oil pressure for each failure.  Green Tr. 69:20-70:12.
- Did not analyze the seal design of the first Flowserve seal that failed immediately, subsequent to Arlanxeo switching from Kaydon to Flowserve seals.  Green Tr. 220:9-15.
- The Forsthoffer & Associates root cause analysis report that found that the Kaydon seal design was not the root cause of the failures.  Green Tr. 232:19-233:1.
- Potential cracks in the compressor's rotor.  Green Tr. 268:13-21.
- Whether the compressors were beyond their useful life expectancy.  Green Tr. 275:6-13.

Dr. Green confirmed that his methodology in reaching his conclusion on the cause of the seal failures was simply that he "looked at the [seal] design," he looked at "the reports from the root cause analysis by Siemens and the other companies and [he] concentrated on the seals."  Green Tr. 101:11-102:12. Dr. Green confirmed that his independent analysis was concentrated on the seal design – not other potential causes.  *Id*.  That much is clear from his Reports.  When asked if he had eliminated all other potential causes of failure, Dr. Green stated that "the answer is I have concentrated on the most likely problem . . . [t]he bushing seal."  Green Tr. 110:4-16.

Dr. Green confirmed that he performed only three root cause failure investigations in his 40-year career – once in 1986, 1987, and 1996.  Green Tr. 103:7-104:9.  Dr. Green testified that the methodology that he uses in a root cause analysis

8

is to look "at machine parts, do surface measurements, looking at deformation, wear tracks, failed components, dynamic signature and such."  Green Tr. 105:20-107:19. However, Dr. Green did not do any of that here.  *Id*.

### III.   STATEMENT OF QUESTION INVOLVED

1.      Should the Court preclude the report, opinions, and testimony of Arlanxeo's expert witness Dr. Itzhak Green? *Suggested Answer:*  **Yes.**

### IV.   ARGUMENT

#### A.   Legal Standard

Federal Rule of Evidence 702 permits qualified expert witnesses to offer opinion testimony only if: (1) the expert's specialized knowledge "will help the trier of fact," (2) the "testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case." Rule 702 imposes a "special obligation" on courts to ensure that expert testimony is both reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 588-92 (1993). The proponent of the evidence bears the burden of establishing that Rule 702's requirements have been met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

"The Court in *Daubert* delegated to district courts a 'gatekeeping responsibility' under Rule 702, which requires them to 'determine at the outset' whether an expert witness can 'testify to (1) scientific knowledge that (2) will assist

the trier of fact.'"  *Bruno v. Bozzuto's, Inc*., 311 F.R.D. 124, 135 (M.D. Pa. 2015) (quoting *Daubert*, 509 U.S. at 592). "That gate-keeping function demands an assessment of 'whether the reasoning or methodology underlying the testimony is scientifically valid' as well as 'whether that reasoning or methodology properly can be applied to the facts in issue.'"  *Id*. (quoting *Daubert*, 509 U.S. at 592).  "*Daubert* also clarified that the proponents of the expert must establish admissibility by a preponderance of the evidence."  *Id*.

The "*Daubert* Court enumerated four relevant questions for district courts to consider when making the Rule 702 determination."  *Id*. (citing *Daubert*, 509 U.S. at 593-94).  The Third Circuit, in *In re Paoli R.R. Yard PCB Litig*., held that "[t]o satisfy the reliability prong, an expert's opinion 'must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation,'" and set forth a list of eight factors that includes the four *Daubert* factors, which "a district court should take into account":

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Bruno*, 311 F.R.D. at 136 (M.D. Pa. 2015) (quoting *In re Paoli R.R. Yard Pcb Litig*., 35 F.3d 717, 742 n.8 (3d Cir. 1994)); *see also Elcock v. Kmart Corp*., 233 F.3d 734,

745 (3d Cir. 2000).  An expert's opinions must also "fit" the case and be connected to the "particular disputed factual issues."  *Id*.

**B.     Dr. Green's Opinions Concerning the Root Cause of the Compressor Failures Should be Precluded Because They Are Not the Product of Reliable Principles and Methods and Are Not Based on Any Specialized Knowledge**

Dr. Green should be precluded from opining on the root cause of Arlanxeo's compressor failures because: (1) he did not conduct a root cause analysis; (2) the method he purports to have utilized is unreliable; (3) he is not qualified to opine on the root cause of compressor failures; and (4) his opinions, focusing on the Kaydon seal design, is not a proper "fit" for the issues in this case.

In its role as gatekeeper, a court must assess whether the reasoning or methodology underlying the expert's opinion is scientifically valid.  *Daubert*, 509 U.S. at 592.  Here, there were ten separate compressor failures following a major overhaul of Arlanxeo's compressors, as performed by Arlanxeo and Siemens.  The main issue in this case, for liability purposes, is the cause of each of those failures.  Arlanxeo proffers Dr. Green to opine directly on the cause of each of those ten compressor failures; however, Dr. Green's opinions are not reliable at the outset because he concedes that he did not conduct a root cause analysis on the failures.  Green Tr. 81:3-16 (Q. Okay But my question is, did you analyze and conduct a root cause analysis for the second seal failure in the C2 [compressor]? . . . A. No. I have not done an analysis of the second seal failure, no.  The answer is no.  Q.  Okay. And

you did not analyze individually each seal failure; correct?  A.  That's correct.").
This concession is fatal to Dr. Green's reliability to opine on the root cause of the
failures.  An expert witness cannot reliably opine on the root cause of ten compressor
failures without conducting a root cause analysis of the ten compressor failures.

Where an expert witness admits to not conducting a root cause analysis, such
an expert must be excluded.  *See Companhia Energetica Potiguar v. Caterpillar
Inc*., No. 14-24277-CIV, 2017 U.S. Dist. LEXIS 91522, at *43-44 (S.D. Fla. June
12, 2017)[2].  In *Companhia*, a party's expert witness opined that "the lack of
lubricating oil or inadequate lubricating properties of the engine lubricating oil is the
root cause of the engines' failure."  *Id*.  Similarly here, Dr. Green opines that "the
root cause of failure for each of the 10 seal failures between the C2 and the C3" was
"Kaydon's defective seal design."  Green Tr. 73:16-74:3. In *Companhia*, the court
noted that the expert "testif[ied] that he did not conduct a root cause analysis," and
therefore, the court precluded the expert from testifying as to the root cause of the
failure.  *Compania Energetica Potguar*, 2017 U.S. Dist. LEXIS 91522.  Here, as in
*Companhia*, Dr. Green concedes that he did not conduct a root cause analysis for
each or any seal failure.  Green Tr., 81:3-16.  Accordingly, Dr. Green should be
precluded from testifying or opining as to the root cause of the seal failures.

---

[2] Any unpublished cases cited herein are attached hereto as Exhibit D.

In addition, in reaching his conclusions, Dr. Green concedes that he did not independently analyze any potential causes of the ten failures except that he "concentrated on seals' [design]."  Green Tr. 101:11-102:12.  Dr. Green's sole focus makes sense given Dr. Green's lifelong career in academia studying seals – and just as a hammer sees everything as a nail, Dr. Green views every issue as a seal problem. An expert opining on the root cause of mechanical failures must perform a reliable root cause analysis methodology.  Dr. Green does not follow any methodology, let alone a reliable one.

The Court could (and, respectfully, should) preclude Dr. Green's opinions solely on the basis that Dr. Green admits he did not conduct a root cause failure analysis. Nonetheless, even analyzing the eight factors from *Paoli*, it is clear that Dr. Green's opinions and methodology are not reliable.

There are many different reliable, generally-accepted, and peer-reviewed methods to conduct a root cause analysis.  For example, there is the Six Sigma root cause analysis method, a Fishbone diagram, Pareto Charts, Fault Tree Analysis, as well as the 8D Process.  *See* What Are Common Root Cause Analysis (RCA) Tools?, 6 Sigma US, March 3rd, 2017, *available at* https://www.6sigma.us/etc/what-are-common-root-cause-analysis-rca-tools/ (last accessed June 5, 2024). Dr. Green used none of these.  When asked whether he was familiar with a generally-accepted methodology such as the 8D Process, Dr. Green testified that he had "read something

13

about it[, but it] is not my expertise."  Green Tr. 105:20-107:19.  And when asked for his methodology, Dr. Green testified that when he conducts a root cause analysis he generally looks "at machine parts, do surface measurements, looking at deformation, wear tracks, failed components, dynamic signature and such" – and not that he adheres to a generally-accepted method of root cause analysis.  Green Tr. 105:20-107:19. But notably, Dr. Green did not do any of that here.  *Id*.  Instead, Dr. Green testified that his methodology here was that he "looked at the [seal] design" and looked at "the reports from the root cause analysis by Siemens and the other companies and [he] concentrated on the seals."  Green Tr. 101:11-102:12.  Dr. Green ignored a plethora of potential causes and instead focused directly on the design of the seal.  *See supra* Section II.

Analyzing the *Paoli* factors, *first*, Dr. Green's lackluster and on-a-whim method does not consist of a testable hypothesis.  This is not an instance of an expert utilizing one of the many widely-recognized aforementioned methods of conducting a root cause analysis.  *Second*, Dr. Green's "method" is not "subject to peer review." *Third*, there is no known or potential rate of error, because the "method" Dr. Green used is merely to focus on the seal design – there is no "method."  *Fourth*, there are no standards controlling the operation of Dr. Green's methodology here.  Indeed, when confronted with an admission from Siemens that it accepted that the second C2 compressor failure was "purely Siemens' responsibility and their managers have

14

accepted" that, Dr. Green refused to accept that his conclusion was incorrect that all ten compressor failures were caused by Kaydon.  Green Tr. 76:13-78:2.  Dr. Green operated under no controls whatsoever, because he did not conduct a root cause analysis.

*Fifth*, Dr. Green's methodology is his own, and is not generally accepted. *Sixth*, whereas there are many generally-accepted and reliable methods to conduct a root cause analysis, Dr. Green chose not to apply any of them, as that is "not [his] expertise."  Green Tr. 105:20-107:19.  *Seventh*, Dr. Green is not qualified to testify on a root cause analysis.  He does not list "root cause analyses" as his areas of expertise, and he performed only three root cause failure investigations in his entire 40-year career – in 1986, 1987, and 1996.  Green Tr. 103:7-104:9.  This is particularly glaring, given that Dr. Green admitted that he was not even able to perform his "typical" root cause analysis methodology.  *And eighth*, there are no instances of Dr. Green's personal "method" of being applied by anyone but Dr. Green, nor of it being applied in a non-judicial setting.

What Dr. Green did here was not a root cause analysis, but rather, it was an analysis of Kaydon's seal design, wherein Dr. Green opines that it could have been designed differently.  The issue in this case is not whether the Kaydon seal could have been designed differently, but whether Kaydon's seals were the root cause of each of the ten compressor failures.  Not only is Dr. Green's methodology, or lack

thereof, unreliable, but his opinions are not helpful to the trier of fact and do not "fit" the issues in this case.  Dr. Green should be precluded from opining on the root cause of the compressor failures.

        **C.**    **Dr. Green's Opinions Concerning the Standard of Care Required and Expected of a Reasonable Manufacturer Should be Precluded Because He is Not Qualified to Provide Such Opinions, and Failed to Apply Any Reliable Methodology to Reach Such Opinions**

Without any support, analysis, or qualification, Dr. Green opines that "Kaydon breached the standard of care required and expected of a reasonable manufacturer."  Green Report, para. 134(f).  Dr. Green states that his "fields of expertise include Contact Mechanics, Tribology (Friction, Lubrication, and Wear), Rotordynamics, Dynamics and Vibrations, Diagnostics and Prognostics, the Finite-Element Method, Viscoelasticity, and Machine Design Elements (Springs, Bearings, Shafts, Fatigue, Fracture Mechanics, Gears (AGMA Compliance), Clutches, Breaks, Flywheels, and Seals - static and dynamic)."  *Id*. at para. 27.  He is **<u>not</u>** an expert in the standards of care expected or required of a reasonable manufacturer.  Indeed, in his 40-year career since graduating college, Dr. Green has never been employed by a manufacturer.  Dr. Green has spent his entire career in academia.  He does not study nor teach on the topic of the standards of care of reasonable manufacturers. Dr. Green possesses no qualifications to opine on such a standard.  Further, Dr. Green's opinion on the standards of care appear out of nowhere.  There is no legal

basis for his opinions.[3]  Dr. Green does not cite what those standards of care are –

and when asked about these purported standards at his deposition, he merely testified

that the standard of care of a reasonable manufacturer is similar to that of a doctor's

duty of care to a patient.  Green Tr. 262:18-263:4.  But this is not a professional

malpractice case. Dr. Green can elucidate no such basis for his standard, and uses no

methodology to test Kaydon's conduct against his standard.  Dr. Green's opinion

should be precluded based on his inability to even articulate the so-called standard.

In *Yazujian v. PetSmart*, the Court precluded an expert from testifying on

"industry best practices" because he had no academic background, formal training,

or work experience on this specific area, and his methods were not subject to peer

review, there was no evidence that his method was tested, accepted, or used by other

experts in the field, and his "testimony would have constituted no more than

subjective belief or supported speculation.'" *Yazujian v. PetSmar*t, 729 F. App'x

---

[3] Moreover, the issue of the "standard of care" of a "reasonable manufacturer" is
wholly irrelevant to this case, and does not meet the "fit" requirement of Rule 702.
Whether a proffered expert's opinion "fits" the case "depends . . . on 'the proffered
connection between the scientific research or test result . . . and [the] particular
disputed factual issues.'"  *Bruno v. Bozzuto's, Inc*., 311 F.R.D. 124, 136 (M.D. Pa.
2015) (quoting *In re Paoli R.R. Yard PCB Litig*., 35 F.3d at 743).  Arlanxeo brings
claims for breach of contract, breach of warranty, and negligence.  The purported
"standard of care" is certainly not relevant to Arlanxeo's breach of contract and
breach of warranty claims, and Arlanxeo's negligence claim is based upon the
allegation that Kaydon's seal was defective – not that it breached some imaginative
"standard of care."  Dr. Green's opinion on the "standard of care" should thus be
precluded because it does not "fit" the claims in this case.

213, 216 (3d Cir. 2018) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742). The same reasons for preclusion apply here. Dr. Green should be precluded from opining and testifying on the standard of care expected and required of a reasonable manufacturer.

## V.    <u>CONCLUSION</u>

Based on the foregoing, Kaydon respectfully requests that the Court issue an order precluding and striking from trial and the record all of Dr. Green's reports, opinions, and testimony.

Date: June 6, 2024                              Respectfully submitted,

**DUANE MORRIS LLP**

*/s/      Patrick J. Loftus*
Patrick J. Loftus (PA ID 60417)
Andrew John Rudowitz (PA ID 324201)
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 687 2599

*Attorneys for Defendant Kaydon Ring & Seal, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2024, a true and correct copy of the foregoing was served via the Court's electronic filing system on the clerk and counsel of record.

*/s/ Andrew J. Rudowitz*
Andrew J. Rudowitz

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)</u>

I certify that the word count for this Memorandum of Law in Support of Defendant's Motion To Preclude The Expert Report, Testimony, And Opinions Of Dr. Itzhak Green is 4,458 words, in compliance with the word-count limit described in Local Rule 7.8(b).

Dated: June 6, 2024

*/s/ Andrew John Rudowitz*