**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ARLANXEO CANADA, Inc., | : |
| | : |
| | : CIVIL ACTION NO. |
| *Plaintiff*, | : 1:21-cv-01843 YK |
| | : |
| v. | : |
| | : |
| KAYDON RING & SEAL, INC., | : |
| | : (Judge Kane) |
| *Defendant.* | : |
| | : |

**DEFENDANT KAYDON RING & SEAL, INC.'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION EXCLUDE TESTIMONY AND REPORT
OF DR. RICHARD W. KLOPP**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ..................................................................................1

II.  BACKGROUND ...................................................................................4

    A.   Factual Background and Dr. Green's Opinions ...............................4

    B.   Dr. Klopp's Credentials, Report and Opinions ...................................5

III. STATEMENT OF QUESTION INVOLVED................................................8

IV.  ARGUMENT..........................................................................................9

    A.   Legal Standard...................................................................................9

    B.   Dr. Klopp is More Than Qualified to Provide Opinions
        Rebutting Dr. Green's Opinions Concerning the Root Cause of
        the Compressor Failures...................................................................9

    C.   Dr. Klopp's Methodology is Reliable .................................................15

    D.   Dr. Klopp's Opinions "Fit" the Dispute.............................................18

    E.   All of Dr. Klopp's Opinions Are Within the Proper Scope of
        Rebuttal ..............................................................................................19

V.   CONCLUSION...........................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ahmed v. Johnson & Johnson Healthcare Sys.*, Civil Action No. 1:22-00190-KD-N, 2024 U.S. Dist. LEXIS 28442 (S.D. Ala. Feb. 20, 2024) ...................................................................................20

*In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5 (S.D.N.Y. 2020) ...............................................................................16

*Bradley v. Amazon.com, Inc.*, No. 17-1587, 2023 U.S. Dist. LEXIS 46056 (E.D. Pa. Mar. 17, 2023) .................................................. 19-20

*Brugler v. Unum Grp.*, No. 4:15-CV-01031, 2019 U.S. Dist. LEXIS 158503 (M.D. Pa. Sep. 17, 2019) ...........................................18

*Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124 (M.D. Pa. 2015) ....................................18

*Complaint of: Borghese Lane, LLC*, No. 2:18-cv-00533-MJH, 2023 U.S. Dist. LEXIS 75270, at *76 (W.D. Pa. Apr. 27, 2023)..............................15

*Kallok v. Wing Enters.*, No. 2:21-cv-805, 2023 U.S. Dist. LEXIS 166082 (W.D. Pa. Sep. 19, 2023) ................................... 12-13

*Oglesby v. GMC*, 190 F.3d 244 (4th Cir. 1999).....................................................13

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 U.S. Dist. LEXIS 62969 (S.D. Fla. June 7, 2011) .......................................16

*In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717 (3d Cir. 1994) ............................9, 18

*Potoski v. Wilkes Univ.*, No. 3:06-CV-2057, 2010 U.S. Dist. LEXIS 99731 (M.D. Pa. Sep. 22, 2010) ...........................................12

*Rinaldi v. SCA La Goutte*, No. 16-CV-1901 (VSB), 2021 U.S. Dist. LEXIS 190866 (S.D.N.Y. Sep. 30, 2021) ...........................................15

*Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378 (D. Md. 2001)....................13

*Sikkelee v. Precision Airmotive Corp.*, No. 4:07-CV-00886, 2021 U.S. Dist. LEXIS 21204 (M.D. Pa. Feb. 4, 2021) .......................................13

*Smart Trike United States, LLC v. Heinz Kettler GMBH & Co. KG*,
  No. 10-2063 (FSH) (PS), 2012 U.S. Dist. LEXIS 199584 (D.N.J.
  June 8, 2012) .............................................................................................. 13-14

*Stratton v. Thompson/Center Arms, Inc.*, 601 F. Supp. 3d 1139 (D.
  Utah 2022) ....................................................................................................13

*United States v. Chrzanowski*, 502 F.2d 573 (3d Cir. 1974) ...................................15

**Federal Statutes and Rules of Court**

Fed. R. Evid. 702 ...........................................................................................9, 12, 14

Defendant Kaydon Ring & Seal, Inc. ("Kaydon") submits this brief in opposition to Plaintiff Arlanxeo Canada, Inc.'s ("Arlanxeo") motion to exclude testimony and report of Kaydon's expert witness, Dr. Richard Klopp (Dkt. No. 40 – "Arlanxeo Motion"; Dkt. No. 48 – "Arlanxeo Brief").

## I.     **INTRODUCTION**

Dr. Klopp is a widely-recognized expert in the field of mechanical engineering, and more specifically in the root cause failure analysis of turbomachinery.  He holds a Ph.D. in mechanical engineering and is a licensed professional engineer.  Dr. Klopp's opinions in this case, as a rebuttal expert, are in rebuttal to the opinions on the root cause of the ten (10) compressor failures proffered by Arlanxeo's expert witness, Dr. Itzhak Green. The crux of Arlanxeo's claim is that, despite Kaydon's mechanical seals working in Arlanxeo's compressors without failure since 1981, the ten (10) compressor failures that occurred immediately following a 2019 major compressor overhaul were not the result of any issues with the overhaul or the fault of any of the many components within the compressors, but rather from Kaydon's unchanged seal design that had worked flawlessly for nearly forty (40) years prior.

Arlanxeo's argument that Dr. Klopp is somehow unqualified to opine on the root cause of the seal/compressor failures is fundamentally flawed, as Arlanxeo apparently misunderstands the task of its own proffered engineering expert – Dr.

Green – and the basis of its own claims.  The relevant expertise and task of an engineering expert in this case is the **determination of the root cause** of each of Arlanxeo's compressor failures – and not specifically "mechanical oil seal design or dynamics," as Arlanxeo appears to believe (such a claim would be 37 years past the statute of limitations).

As stated in its Brief, Arlanxeo "engaged Dr. Itzhak Green **to determine the root cause**" of the ten (10) separate Arlanxeo compressor failures.  Arlanxeo Brief, p. 4 (emphasis added).  And accordingly, Dr. Klopp's charge as Kaydon's rebuttal expert, was to "assess whether [Dr. Green's] root cause determination was supported by the facts."  Expert Report of Richard W. Klopp, attached hereto as Exhibit A (the "Klopp Report"), at p. 3.  To do so, of course, the relevant expertise required is in root cause failure analysis on turbomachinery – like the compressors at issue.  Here, Dr. Klopp is a recognized expert in root cause "failure analysis," with "extensive training and experience in failure analysis, and [has] taught the ASME course, 'Techniques of failure analysis.'"  Klopp Report, p. 2.  Dr. Klopp has applied his failure analysis expertise to turbomachinery (like the compressors at issue here) and their components.  Arlanxeo even concedes that Dr. Klopp's expertise includes "root cause analysis, fatigue analysis, and material strength analysis."  Arlanxeo Brief, p. 8.  Arlanxeo's argument that Dr. Klopp, notwithstanding his credentials and expertise in the field of mechanical engineering and root cause failure analysis, must

somehow be an expert in the very specific type of mechanical oil seal design (a single component of the many potential failure mechanisms of the compressors) is contrary to the well-established law cited herein.

Arlanxeo also argues, in error, that Dr. Klopp's methodology is unreliable, because he did not conduct a root cause analysis.  However, Dr. Klopp is a *rebuttal* expert not tasked with affirmatively determining the single definitive root cause, but rather, to review and rebut Dr. Green's opinions.  Dr. Klopp analyzed thousands of pages of deposition testimony and documents, applied his forty years of experience in root cause analysis of turbomachinery, and developed his opinions.  Courts around the country firmly hold that a rebuttal expert need not produce models or methods of their own, but need only critique and rebut those of plaintiff's expert.

Arlanxeo also argues that Dr. Klopp's opinions do not "fit" this case; however, this makes no sense, as a key disputed factual issue in this case is the root cause of the compressor failures – exactly what Dr. Klopp opines on.

And finally, Arlanxeo is simply incorrect that Dr. Klopp opines on issues that are outside the proper scope of rebuttal.  All of his opinions are directly aimed at Dr. Green's opinions on the root cause of the compressor failures.

## II.   <u>BACKGROUND</u>

### A.   **Factual Background and Dr. Green's Opinions**

Arlanxeo claims that Kaydon's seals caused Arlanxeo's compressors to fail on ten occasions, immediately following a major overhaul to the compressors by Arlanxeo and Siemens (the compressor manufacturer), despite the fact that the Kaydon seals had worked perfectly fine for the entire 37-year life of the compressors.   The Kaydon seals at issue in this case were designed in 1981 specifically to be used in the C2 and C3 compressors, and were manufactured by Kaydon and then sold to Siemens' predecessor company, the compressor manufacturer.   A true and correct copy of the Green Report is attached to Kaydon's Motion to Preclude Itzhak Green as Exhibit A, Dkt. No. 43., ¶¶ 50-52.   Arlanxeo's compressors are comprised of many components, each of which may have been the root cause of any of the failures.   Klopp Report, at Table 3. During the period of the compressor failures, Arlanxeo hired several consultants to conduct root cause analyses of the failures – and not one of them was able to reach a definitive root cause of the failures.   A true and correct copy of certain excerpts from the March 13, 2024, deposition transcript of Dr. Itzhak Green is attached hereto as Exhibit B ("Green Tr."), at 87:2-9.   Arlanxeo first blamed Siemens' poor workmanship during the compressor overhauls for the failures, and thereafter entered into a multimillion

4

dollar settlement with Siemens.  Arlanxeo then filed this lawsuit against Kaydon, now blaming Kaydon's seals for the failures.

On October 27, 2023, Arlanxeo served the opening report from its proffered expert witness, Dr. Itzhak Green.  Dr. Green states that his Report is intended "to assist the Parties and the Court to understand the *cause* of the Compressor seal failures."  Green Report, at para. 23 (emphasis added).  As stated in its Brief, Arlanxeo "engaged Dr. Itzhak Green **to determine the root cause**" of the ten (10) separate Arlanxeo compressor failures.  In Dr. Green's Reports, he concludes that the Kaydon seal design should have been designed differently, and therefore, it was the cause of Arlanxeo compressor failures.

### B.    Dr. Klopp's Credentials, Report and Opinions

Dr. Klopp was engaged by Kaydon as a rebuttal expert in response to Arlanxeo's proffer of Dr. Green's opinions on the root cause of the compressor failures.  In Dr. Klopp's Report, he states that he was engaged to "review, analyze, and respond in view of the available evidence," to "assess whether Dr. Green had followed proper engineering and scientific methods in developing his conclusions [on the root cause of the failures], and to therefore assess whether his conclusions were supported by the available evidence and were correct."  Klopp Report, p. 4. Dr. Klopp was not asked to redesign the Kaydon seals at issue.  *Id*.

5

Dr. Klopp is a Principal Engineer at Exponent, the world's largest engineering and scientific consulting firm dedicated to solving technology problems of all kinds. *Id.*, p. 2.  Dr. Klopp is a trained mechanical engineer, holding professional engineer licenses in several states and four academic degrees: "a B.S. in Mechanical Engineering from Lehigh University, an Sc.M. in Engineering, an Sc.M. in Applied Mathematics, and a Ph.D. in Engineering, all from Brown University." *Id.*, p. 2.  Dr. Klopp is a Fellow of the American Society of Mechanical Engineers ("ASME") and has been practicing in the field of mechanical engineering for more than 40 years. *Id.*  Dr. Klopp's expertise in mechanical engineering includes root cause failure analysis, machine design, product design, etc.  *Id.*  Dr. Klopp's lengthy experience includes investigating failures and conducting root cause failure analyses of all kinds, and he has taught the ASME class, "Techniques of failure analysis" as part of a course on root cause failure analyses.  *Id.*  Dr. Klopp also has "extensive training and experience in the engineering and application of turbomachinery and their components," like the compressors at issue here.  *Id.*

Dr. Klopp has extensive experience in root cause failure analysis, and indeed, Exponent, which Dr. Klopp joined in 1999, was originally called Failure Analysis Associates.  A true and correct copy of certain excerpts from the March 26, 2024, deposition transcript of Dr. Richard Klopp is attached hereto as Exhibit C ("Klopp Tr."), at 28:20-29:17.  When Dr. Klopp joined Exponent in 1999 as a Senior

Engineer, the scope of his duty included "a lot of root cause failure analysis type of work on all kinds of mechanical engineering problems." *Id*., 30:11-22. As Dr. Klopp describes it, "a lot of [his] work involves some machine failing, some machine being damaged[, and he] would analyze these situations and try to decide what is it about the machine, or how the machine is operated, or what it's used for, or what's put into it, all of that to figure out either what was the root cause of some incident or what would you do to prevent some incident from happening." *Id*., 31:7-20. Dr. Klopp has lectured and presented several times on "the proper way to do a root cause analysis." *Id*., 44:22-45:10. In addition, Dr. Klopp's expertise in "materials behavior and fracture analysis" assisted Dr. Klopp in understanding the failure at issue in this case and the potential causes. *Id*., 33:9-23.

Dr. Klopp has also reviewed several mechanical seal designs as part of his root cause failure analyses, including one on a "recent gas turbo compressor incident" where the seals had failed. *Id*., 34:17-35:4. Dr. Klopp has analyzed "all kinds of seals in [his] career that have failed," however, does not recall if any of these failures included specifically a mechanical *oil* seal. *Id*., 35:22-36:7. Dr. Klopp has written several "reports on turbomachinery failures" in his career. *Id*., 41:18-23. He has also testified or rendered opinions as an expert witness on cases involving mechanical seals, as well as root cause failure analyses. *Id*., 64:24-65:22; 71:16-73:3.

In reaching his opinions in this case, Dr. Klopp reviewed many materials concerning the compressors and the failures, as well as the deposition testimony and exhibits thereto concerning the same.  *Id*., 87:5-17.  Dr. Klopp, based on his expertise, experience, and review of the materials and Dr. Green's Report, rebutted Dr. Green's opinions, opining that "Dr. Green failed to do a proper failure analysis," that there is "insufficient evidence to conclude the seals are defective to a reasonable degree of engineering certainty," that the "seal failures are a symptom and not a cause of the compressor failures," and that "it is likely that Arlanxeo did not properly operate, maintain, or repair the subject compressors."  Klopp Report, p. vii.  Dr. Klopp testified that "based on [his] own experience, [he] knows that the seals are probably the most sensitive part of" the compressors.  Klopp Tr. 91:3-18.  And thus, when something in the compressor system goes awry, those effects are seen at the seal.  Dr. Klopp did not conduct a full root cause failure analysis, nor did he reach any specific conclusion about the definitive root cause; but rather, in analyzing and rebutting Dr. Green's purported analysis, Dr. Klopp opines that "based on information [he has] in front of [him], the seals themselves are not the root cause."  *Id*., 91:19-92:9.

## III.   STATEMENT OF QUESTION INVOLVED

1.    Should the Court preclude the testimony and report of Dr. Richard Klopp? ***Suggested Answer:***  **No.**

8

IV.   **ARGUMENT**

A.   **Legal Standard**

Federal Rule of Evidence 702 permits qualified expert witnesses to offer opinion testimony if: (1) the expert's specialized knowledge "will help the trier of fact," (2) the "testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case."  The Third Circuit has applied a "liberal policy of admissibility" under Rule 702, and has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications."  *In re Paoli R.R. Yard Pcb Litig*., 35 F.3d 717, 741 (3d Cir. 1994).

B.   **Dr. Klopp is More Than Qualified to Provide Opinions Rebutting Dr. Green's Opinions Concerning the Root Cause of the Compressor Failures**

Dr. Klopp has opined on and rebutted Dr. Green's purported root cause analysis of the compressor failures and his conclusions thereof.  There can be no debate that Dr. Klopp is more than qualified to opine on root cause failure analysis of mechanical equipment.  Indeed, Arlanxeo concedes that Dr. Klopp has the expertise and experience in "root cause analysis, fatigue analysis, and material strength analysis."  Arlanxeo Brief, p. 8.  Instead, Arlanxeo appears to argue that Dr. Klopp is unqualified to opine on the root cause analysis of the compressor failures because he is allegedly not an expert in the sub-specialty of "mechanical oil seal

design or dynamics." *Id*.  Arlanxeo's position here is the result of a fundamental misunderstanding of the issues in this case.

A key disputed issue in this case is whether the Kaydon seals, which had previously worked without any problems for 37 years, are the root cause of each of the ten (10) compressor failures that occurred immediately following a major overhaul of the compressors by Arlanxeo and Siemens.  Accordingly, and as stated in its Brief, Arlanxeo "engaged Dr. Itzhak Green **to determine the root cause**" of the ten (10) separate Arlanxeo compressor failures. Arlanxeo Brief, p. 4 (emphasis added).  It is important to note that the compressors are comprised of many components, any of which may be the root cause of any of the ten failures.  For example, during the 2019 major overhaul of the C2 compressor, Arlanxeo and Siemens replaced the incredibly large, and fast-spinning rotor/shaft with an old rotor/shaft that had previously been welded together.  As noted by Dr. Klopp, and other fact witnesses, because the seals are "the most sensitive part of" the compressors, any problems in the compressor will be witnessed at the seals.  Klopp Tr. 91:3-18.  So, for example, if there are "shaft excursions happening in those compressors, [the seals] will be the thing that suffers." *Id*.  In this example, the "shaft excursions" would be the root cause of the failures – not the seals.  Accordingly, the root cause of the failures is a key disputed issue. Indeed, Arlanxeo

asserted claims against Siemens as a result of the compressor failures, which were resolved by a settlement under which Arlanxeo received more than $3,000,000.

Dr. Green purports to have conducted a root cause failure analysis (he did not) and his conclusion is that the Kaydon seal design (which had previously worked for 37 years, until Arlanxeo's overhaul of the compressors) was the root cause of the compressor failures. Dr. Klopp's task as Kaydon's rebuttal expert, was to rebut Dr. Green's purported analysis and conclusions, and to "assess whether [Dr. Green's] root cause determination was supported by the facts." Klopp Report, p. 3. This is precisely what Dr. Klopp did. Dr. Klopp's testimony and opinions relate to the root cause analysis of the compressor failures, and not specifically to "mechanical oil seal design or dynamics." Arlanxeo Brief, p. 8. A specific expertise in mechanical oil seal design is simply not relevant, nor required, to determine the root cause of each of the failures, and not necessary to opine on the root cause analysis of the compressor failures; but rather, an expertise in conducting root cause failure analyses of turbomachinery is directly relevant here, and Dr. Klopp possesses more than enough expertise in this area.

As set forth in detail, *supra* Section II.B, Dr. Klopp has more than 40 years' experience practicing in the field of mechanical engineering, which includes conducting root cause failure analyses of all kinds, with extensive training and experience in the engineering and application of turbomachinery and their

11

components, like the compressors at issue here.  Most of his work involves analyzing

machine failures and determining the root cause of the failures.  Klopp Tr. 28:20-

29:17, 31:7-20.  Dr. Klopp has taught an ASME class on failure analysis techniques,

has analyzed many types of mechanical seal failures in the field, and has written

several reports on turbomachinery failures in his career.  Klopp Report, p. 2; Klopp

Tr. 41:18-23.  It would be difficult to conceive of a more qualified expert witness to

testify as to a root cause failure analysis of turbomachinery.

To the extent that an expertise in "mechanical oil seal design or dynamics" is

even relevant here, courts have consistently held that an expert "need only possess

sufficient expertise through a combination of education, knowledge, and experience

to qualify as an expert."  *Kallok v. Wing Enters.*, No. 2:21-cv-805, 2023 U.S. Dist.

LEXIS 166082, at *5 (W.D. Pa. Sep. 19, 2023); *see also Potoski v. Wilkes Univ.*,

No. 3:06-CV-2057, 2010 U.S. Dist. LEXIS 99731, at *24 (M.D. Pa. Sep. 22, 2010)

(finding that expert's experience in organizational psychology qualified him to opine

on the reorganization of a college department because Rule 702 "is not so narrow

that it requires the level of precision desired by Plaintiffs").

In *Kallok*, the court held that the *plaintiff's* proffered expert witness, with a

Ph.D in mechanical engineering, was qualified to opine on the failure analysis of

ladder failures despite not having specific expertise in "weld failures" or "ladder

failures" because the expert "need not be the most qualified expert or **have expertise**

12

**in a subspecialty limited to ladder failures**." No. 2:21-cv-805, 2023 U.S. Dist. LEXIS 166082, at *5. (emphasis added). The court held that "[c]ontrary to [the movant's] contentions, he is not required to be a 'ladder expert' or a metallurgist to be qualified to opine regarding what he characterizes as the failure of welds in the ladder." *Id*. The court allowed plaintiff's expert to opine *affirmatively* as to the root cause of the failures. *Id*.

In *Sikkelee v. Precision Airmotive Corp.*, this Court addressed a motion to preclude an expert witness from testifying as to a failure analysis because the expert was a nuclear engineer, with no specialized knowledge, "training or experience in aircraft accidents or metallurgy." No. 4:07-CV-00886, 2021 U.S. Dist. LEXIS 21204, at *43-44 (M.D. Pa. Feb. 4, 2021). The court held that the expert witness was well qualified given he was an investigator in many projects wherein he conducted failure analyses. *Id*.[1] Similarly, in *Smart Trike United States, LLC v.*

---

[1] The cases cited by Arlanxeo at pages 7-8 of its Brief are from out of this Circuit and wholly irrelevant to the issue here where an expert in root cause failure analysis of turbomachinery is providing an opinion on root cause failure analysis of turbomachinery. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 393 (D. Md. 2001) (precluding mechanical engineer from opining on "the safe design and operation of snow throwers" and inadequate safety warnings, where engineer had zero experience "with respect to the design, manufacture, operation, or safety of outdoor power equipment"); *Oglesby v. GMC*, 190 F.3d 244, 251 (4th Cir. 1999) (affirming district court opinion excluding expert's testimony – **not because he was unqualified**, but because he "lacked 'the reliability, foundation and relevance necessary for admissibility'"); *Stratton v. Thompson/Center Arms, Inc.*, 601 F. Supp. 3d 1139, 1151 (D. Utah 2022) (precluding expert from testifying on firearm ballistics

*Heinz Kettler GMBH & Co. KG*, the court addressed a motion to disqualify a proffered engineering expert because he did not have experience measuring a very specific rotation of a certain steering mechanism in tricycles or bicycles.  No. 10-2063 (FSH) (PS), 2012 U.S. Dist. LEXIS 199584, at *9 (D.N.J. June 8, 2012).  The court held that the movant "proffers an **extremely narrow description** of the qualifications required—apparently experience in measuring angular rotation of steering mechanisms in tricycles or bicycles—that has no support in the case law." *Id*. (emphasis added).  The court held that the expert's "mechanical engineering and experience" background "analyzing the interaction of mechanical components in vehicles" "easily clears the bar set by Rule 702 for experts' qualifications."  *Id*. (emphasis added).

Here, Dr. Klopp clearly possesses the expertise required to opine on the root cause failure analysis of the compressor failures, in order to rebut Dr. Green's opinions.  Indeed, Dr. Klopp is an expert in root cause failure analysis of turbomachinery, and his opinions are of the root cause failure analysis of turbomachinery.  Arlanxeo's misplaced and "extremely narrow description of the qualifications required" has no basis in law.

---

or tool marks because "his CV and publications contain no reference to external ballistics, terminal ballistics, or tool mark analysis").

### C.    Dr. Klopp's Methodology is Reliable

Arlanxeo once again misunderstands Dr. Klopp's report.  Dr. Klopp is a *rebuttal* expert, who is tasked with analyzing the facts and opining on and rebutting Dr. Green's opinions on the root cause of the compressor failures.  Dr. Klopp does precisely this.

Under Third Circuit law, "[t]he proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974).  Arlanxeo apparently takes issue with the fact that Dr. Klopp did not conduct a full-blown root cause analysis to affirmatively identify a single root cause for each of the failures.  Arlanxeo Brief, p. 11.  However, it is not Kaydon's burden to affirmatively prove precisely what was the root cause of the failures; rather, Dr. Klopp was proffered to repel, counteract or disprove Dr. Green's opinions that the Kaydon seals were the root cause of the failures.

Courts around the country hold that "a rebuttal expert has 'no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts.'" *See, e.g., Rinaldi v. SCA La Goutte*, No. 16-CV-1901 (VSB), 2021 U.S. Dist. LEXIS 190866, at *15-16 (S.D.N.Y. Sep. 30, 2021) (holding that rebuttal expert "had no obligation to produce any methodology of her own"); *Complaint of: Borghese Lane, LLC*, No. 2:18-cv-00533-MJH, 2023 U.S. Dist.

LEXIS 75270, at *76 (W.D. Pa. Apr. 27, 2023) (finding that "[c]ourts have held that, '[i]t is the proper role of rebuttal experts to critique [...] expert's methodologies and point out potential flaws in the [...] experts' reports'"); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020) ("A rebuttal expert, by nature, criticizes the methodology and/or opinions of another. There is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party."); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 U.S. Dist. LEXIS 62969, at *16 (S.D. Fla. June 7, 2011) ("rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts.").

The same is true here.  For example, a rebuttal damages expert need not conduct a damages calculation, with a resulting damages number of her own, but rather, must merely disprove and counteract plaintiff's damages expert.  Dr. Klopp need not conduct his own root cause failure analysis to rebut Dr. Green's opinions.

Here, Dr. Klopp did use a reliable methodology.  Dr. Klopp, armed with 40 years of experience in root cause failure analysis, reviewed all of the deposition testimony, the exhibits thereto, and other third parties' reports on their respective investigations into the failure, and then opined on (rebutting) Dr. Green's opinions

16

and conclusions.[2] Dr. Klopp's methodology in applying his expertise, and reviewing the record, to critique Dr. Green's opinions, has been held as a reliable methodology by courts around the country.

Finally, Arlanxeo's criticisms of Dr. Klopp's methodology actually underscore the flaws in its own expert, Dr. Green's methodology; except Dr. Green was tasked with *affirmatively* conducting a root cause analysis, not simply *rebutting* like Dr. Klopp is here. Arlanxeo Brief, p. 11. For example, Arlanxeo argues that Dr. Klopp did not perform a root cause analysis – however, Dr. Green admits that he did not "conduct a root cause analysis." Green Tr. 81:3-16. Arlanxeo argues that Dr. Klopp did not "take any measurements of the seals" – however, Dr. Green admits that he did not take any measurements of the seals – "No measurements, none whatsoever." Green Tr. 59:5-15. Arlanxeo apparently takes issue that Dr. Klopp did not "inspect the Oil Seals or the compressors at issue" – however, Dr. Green only visibly looked at two Kaydon seals of the ten failures, did not even know if those two seals had failed, and did not inspect the compressors at issue. Green Tr. 52:2-54:17; 59:21-62:13. Arlanxeo's complaints might have merit if Dr. Klopp were

---

[2] Arlanxeo spills much ink citing to cases that precluded experts from merely relying on other experts' opinions. Arlanxeo Brief, pp. 10-11. Here, Dr. Klopp does not merely "parrot or act as a mouthpiece for other experts' opinions," but rather, Dr. Klopp analyzed all of the deposition testimony, exhibits thereto, and relevant documents, to rebut Dr. Green's opinions.

tasked with affirmatively determining the root cause of the compressor failures, but he was not.  Rather, Arlanxeo's proffered expert, Dr. Green, was tasked as such, and failed to apply any type of reliable methodology.  Dr. Klopp's methodology here in rebutting Dr. Green's opinions on the root cause of the compressor failures is reliable

### D.   Dr. Klopp's Opinions "Fit" the Dispute

Arlanxeo's argument that Dr. Klopp's opinions do not "fit" this dispute appears to be the result of a misunderstanding of the "fit" element under *Daubert*. Whether a proffered expert's opinion "fits" the case "depends . . . on 'the proffered connection between the scientific research or test result . . . and [the] particular disputed factual issues.'" *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 136 (M.D. Pa. 2015) (quoting *In re Paoli*, 35 F.3d at 743).  This Court has equated the "fit" element to whether the expert's testimony "is helpful to the trier of fact," and held that "[c]ourts in the Third Circuit 'interpret the helpfulness standard broadly.'" *Brugler v. Unum Grp.*, No. 4:15-CV-01031, 2019 U.S. Dist. LEXIS 158503, at *48 (M.D. Pa. Sep. 17, 2019).

Here, Dr. Klopp opines on the root cause failure analysis of the compressor failures.  This issue is at the heart of the case, and is one of the key disputed factual issues.  Of course Dr. Klopp's opinions "fit" this case, and will be "helpful to the trier of fact."  Arlanxeo's final argument that Dr. Klopp's opinions somehow lack foundation because he did not consider one specific document of the more than

25,000 documents produced by the parties is both incredulous and without any basis; particularly, where Plaintiff's expert, Dr. Green, similarly did not list the document on his Materials Reviewed appendix, and where the document relating to the C3 compressor lacks relevance as it was created  by Siemens, who entered into a multimillion dollar settlement with Arlanxeo due to the failures, and who has admitted responsibility for the C3 compressor failure.   Dr. Klopp reviewed thousands of pages of deposition testimony and documents.  Dr. Klopp's opinions "fit" this case and are well founded.

### E.    All of Dr. Klopp's Opinions Are Within the Proper Scope of Rebuttal

Arlanxeo's argument that "Dr. Klopp's Report goes well beyond responding to and critiquing Dr. Green's opinions on causation" is simply not true.  Dr. Green opines on causation, and specifically, opines that Kaydon's seals were the root cause of the compressor failures.  For Arlanxeo to then argue that Dr. Klopp's opinion that the "Seals did not cause the Compressor shutdowns" is not a proper rebuttal of Dr. Green's opinion does not make any sense.  That is a direct rebuttal of Dr. Green's opinion.  The case cited by Arlanxeo – *Bradley v. Amazon.com, Inc.* – involved a **plaintiff's** rebuttal expert that offered brand new **affirmative** theories of defect and causation that were outside the scope of the defendant's expert's opinions, were submitted after the deadline for plaintiff's affirmative expert reports, and thus did not "refute" the defendant's expert's opinion.  No. 17-1587, 2023 U.S. Dist. LEXIS

46056, at *35-37 (E.D. Pa. Mar. 17, 2023).  In *Bradley*, unlike this case, the plaintiff attempted to sneak in a late affirmative expert under the guise of a "rebuttal expert." *Id*.  The court precluded the plaintiff's "rebuttal" expert from opining on new theories of defect and causation because the defendant had no opportunity to depose or otherwise examine the expert's opinions on these brand new theories.  *Id*. at *39.

Here, Dr. Klopp's opinions are proffered in direct rebuttal to Dr. Green's opinions on the root cause of the failures.  Arlanxeo misrepresents to the Court when it avers that "Dr. Klopp admits that he is 'doing more than evaluating whether Dr. Green's investigation was proper[.]" Arlanxeo Brief, p. 14.  Dr. Klopp's testimony cited by Arlanxeo was as follows: "The evidence shows that the seals did not cause the failure.  We don't know what did.  But the evidence shows that the seals didn't, if by virtue only that the original design worked for fine 37 years."  Klopp Tr. 139:8-17.  Again, in opining that the seals did not cause the failure, this is in direct rebuttal to Dr. Green's ultimate conclusion that the seals caused the failure.

Arlanxeo also argues that Dr. Klopp affirmatively opines that "something about the major overhaul triggered the subsequent seal failures."  This too is merely a rebuttal opinion that it was not the seals themselves that caused the failures.  Dr. Klopp is not attempting to specify what exactly caused the failures (he uses the word "*something*"), and is not offering any *affirmative* opinions – he is merely contradicting Dr. Green's opinion.  *See Ahmed v. Johnson & Johnson Healthcare*

*Sys.*, Civil Action No. 1:22-00190-KD-N, 2024 U.S. Dist. LEXIS 28442, at *38 (S.D. Ala. Feb. 20, 2024) ("When a rebuttal expert's report responds to the opposing expert's opinions and controverts those opinions by reaching contrary conclusions, the rebuttal expert's report falls within the permissible scope of rebuttal evidence."). Further, Arlanxeo deposed Dr. Klopp after he submitted his report, and Dr. Green submitted a report in rebuttal to Dr. Klopp's opinions.  There can be no argument of prejudice even if it were an affirmative opinion (which it is not, given that Kaydon is the defendant here).

## V.    <u>CONCLUSION</u>

Based on the foregoing, Kaydon respectfully requests that the Court deny Arlanxeo's motion to preclude the opinions and testimony of Dr. Richard Klopp.

Date: June 20, 2024                    Respectfully submitted,

**DUANE MORRIS LLP**

*/s/      Patrick J. Loftus*
Patrick J. Loftus (PA ID 60417)
Andrew John Rudowitz (PA ID 324201)
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 687 2599

*Attorneys for Defendant Kaydon*
*Ring & Seal, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2024, a true and correct copy of the foregoing was served via the Court's electronic filing system on the clerk and counsel of record.

<u>*/s/ Andrew J. Rudowitz*</u>
Andrew J. Rudowitz

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)</u>

I certify that the word count for this Brief in Opposition to Plaintiff's Motion to Preclude Testimony and Report of Dr. Richard Klopp is 4,999 words, in compliance with the word-count limit described in Local Rule 7.8(b).

Dated: June 20, 2024

<u>/s/ Andrew John Rudowitz</u>