IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARLANXEO CANADA, INC., | : | |
| Plaintiff | : | No. 1:21-cv-01843 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| KAYDON RING & SEAL, INC., | : | |
| Defendant | : | |

**MEMORANDUM**

Before the Court are Defendant Kaydon Ring & Seal, Inc. ("Defendant")'s unopposed motions to file documents under seal (Doc. Nos. 62, 77) and Plaintiff Arlanxeo Canada, Inc. ("Plaintiff")'s motion to file documents under seal (Doc. No. 72). For the reasons that follow, the Court will deny the motions.

**I.   BACKGROUND**[1]

Plaintiff operates a butyl rubber production facility in Sarnia, Ontario, Canada ("Sarnia Facility"). (Doc. No. 1 ¶ 6.) To produce the butyl rubber, the Sarnia facility utilizes two (2) refrigeration compressors, known as the C2 Compressor and C3 Compressor (collectively "Compressors"). (Id. ¶ 8.) The Compressors are comprised of "vital components" called mechanical seals ("Seals"). (Id. ¶ 9.) If the Seals fail, then the Compressors fail, and if the Compressors fail, then the Sarnia facility's rubber production is "greatly diminished." (Id. ¶¶ 11, 13.) Defendant originally designed and manufactured the eleven (11) Seals utilized by Plaintiff (four (4) in use and seven (7) in reserve). (Id. ¶¶ 14, 16, 17.) Plaintiff contracted with Defendant to repair and refurbish all Seals, and those repairs occurred in 2015 and 2016. (Id.) In 2019, Plaintiff scheduled a major overhaul for the C2 Compressor, a minor overhaul for the C3

---

[1] The following factual allegations are taken from Plaintiff's complaint. (Doc. No. 1.)

Compressor, and an emergency refurbishment of the Seals. (Id. ¶¶ 20, 25–26.) The overhauls took place from about September 2019 to about October 2019. (Id. ¶¶ 27, 30–31, 45.) Both Compressors failed after their respective overhauls. (Id. ¶¶ 30–31, 45.) Plaintiff inspected the Compressors and found the Seals had failed in both. (Id. ¶¶ 32, 46.) A cascade of compressor failures followed between October 2019 and May 21, 2021. (Id. ¶¶ 35, 37, 48, 41–42, 59, 64, 68, 70.) The C2 Compressor failed eight (8) times and the C3 Compressor failed two (2) times. (Id.)

Plaintiff noted that the Seals caused each of the compressor failures and notified Defendant. (Id. ¶¶ 32–33, 36, 38, 41–42, 53–55, 59, 61, 64–65, 66, 68.) After the C2 Compressor's fourth failure, Plaintiff sent it to a service center in Houston, Texas for a root cause analysis, in which Defendant participated. (Id. ¶¶ 49, 51, 53.) Defendant's personnel uncovered seal defects and repaired the Seals at its Pennsylvania manufacturing facility before sending them back to Houston for installation. (Id. ¶¶ 53–55.) After the seventh failure, Plaintiff began a transition to a new seal supplier, Flowserve Corporation ("Flowserve"). (Id. ¶ 69.) When the C2 Compressor failed for the eighth time, Plaintiff replaced all remaining Seals from Defendant with Seals designed and manufactured by Flowserve. (Id. ¶¶ 70–71.) Plaintiff's inspection of the Defendant's Seals "indicate that the bushing seal is unbalance[d] as designed, which over time results [in] surface fretting causing the bushing seal to lock-up, stall, and fail." (Id. ¶ 18.) Further, Plaintiff's inspection also revealed that "the design of the Seals are defective in that they lead to waviness, taper, coning, and wear of the mechanical face seal which also results in failure." (Id.)

On October 29, 2021, Plaintiff filed a complaint against Defendant asserting claims of breach of contract (Count I), breach of warranty (Count II), and negligence (Count III) based on

the foregoing facts. After discovery closed on July 31, 2023, the parties submitted motions to exclude the expert reports and testimonies of Geoff R. Hall, Itzhak Green, Bradley D. Wolf, and Dr. Richard W. Klopp (Doc. Nos. 40, 42–44) ("Daubert motions") pursuant to this Court's April 11, 2024 Order (Doc. No. 39). On March 31, 2025, the Court issued a Memorandum and Order denying the Daubert motions and directing the parties to file any dispositive motions on or before April 30, 2025. (Doc. Nos. 58, 59.)

After the Court granted an extension of time to file a motion for summary judgment (Doc. No. 61), on May 14, 2025, Defendant filed a motion for summary judgment (Doc. No. 63), a statement of facts (Doc. No. 64), and an unopposed motion for leave to file under seal Exhibits 1, 13, 22, 24, 25, 27–29, 31–33, 35, 40–44, 46–49, 51, and 56, along with the corresponding exhibits under seal (Doc. Nos. 62, 65 through 65-21).[2] On May 28, 2025, Defendant filed a brief in support of its motion for summary judgment. (Doc. No. 68.) The Court granted Plaintiff an extension of time to file a response to Defendant's motion for summary judgment on June 12, 2025 (Doc. No. 70), after Plaintiff requested an extension of time on June 11, 2025 (Doc. No. 69). On July 9, 2025, Plaintiff filed its brief in opposition to Defendant's motion for summary judgment (Doc. No. 73), a response to Defendant's statement of facts (Doc. No. 71), and a motion for leave to file under seal Exhibits 7, 11, 13, 17, 19–24, 27–33, 36–40, 42–55, 57–60, and 62 (Doc. No. 72). Plaintiff filed under seal the exhibits corresponding with those mentioned in its motion for leave to file under seal on July 11, 2025. (Doc. Nos. 74 through 74-40.) In

---

[2] Although Defendant and Plaintiff both provide the Court with exhibit numbers for the sixty-eight (68) exhibits that are the subject of the pending motions, the Court will use the docket numbers to differentiate the exhibits because the exhibits submitted under seal in connection with Defendant's first motion for sealing and the exhibits submitted in connection with Plaintiff's motion for sealing use the same numbering system for their exhibits. See (Doc. Nos. 65 through 65-21; 74 through 74-40).

3

accordance with the Court's Order granting Defendant's motion for an extension to file a reply to Plaintiff's brief in opposition (Doc. Nos. 75, 76), on August 6, 2025, Defendant filed a reply brief in further support of its motion (Doc. No. 79) and a second unopposed motion for leave to file under seal Exhibits A, B, C, and F, along with the corresponding exhibits under seal (Doc. Nos. 77, 78 through 78-2).  Defendant's summary judgment motion remains pending before the Court.  Defendant and Plaintiff's motions for leave to file documents under seal are ripe for resolution.

## II.     LEGAL STANDARD

The Third Circuit's opinion in In re Avandia Marketing, Sales Practices and Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) ("Avandia") confirmed its earlier holding that a common law right of access applies to judicial records, stating that there exists a "presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."  See id. at 672 (citing In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001)).  The Third Circuit reiterated that "documents filed in connection with a motion for summary judgment are judicial records."  See id. (citing Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660–62 (3d Cir. 1991)).  However, Avandia recognized that "the common law right of access is 'not absolute'" and stated that "[t]he party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'"  See id. (quoting Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 344 (3d Cir. 1986)).  The Third Circuit held that "[t]he movant must show 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure.'"

See id. (quoting Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotations omitted)).

The Third Circuit then detailed the nature of a district court's obligation in determining whether a litigant has met its burden to show that the presumptive right of access has been overcome, stating:

> [T]he District Court must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard. In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. [C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct[] a document-by-document review of the contents of the challenged documents.

See id. at 672–73 (cleaned up).

The Third Circuit in Avandia discussed not only the common law right of access to judicial records but also the First Amendment right of access to judicial proceedings, which "requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." See Avandia, 924 F.3d at 673 (quoting In re Cendant Corp., 260 F.3d at 198 n.13). "It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings." Id. The majority in Avandia declined to address the applicability of the First Amendment right of access to summary judgment materials under the circumstances of that case, where the litigant had not met its burden to overcome the presumptive common law right of access to judicial records. See id. at 679–80. However, as to the First Amendment right of access, the court stated that "[w]e use a two-prong test to assess whether the right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong

5

evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" See id. at 673 (quoting N. Jersey Media Grp. Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016)).  If both prongs are met, the First Amendment right of access presumptively applies, and this presumption can be rebutted "only if [the party seeking closure is] able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" See id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984)).  In declining to consider the applicability of the First Amendment right of access under the circumstances presented to it in Avandia,[3] the Court of Appeals directed that "[i]f on remand the District Court concludes that any of the sealed documents merits continued confidentiality under the common law right of access, then the Court should also consider the parties' arguments regarding the First Amendment right of public access."  See Avandia, 924 F.3d at 680.

## III.   DISCUSSION

As discussed supra, Defendant and Plaintiff seek to maintain sixty-eight (68) exhibits filed in connection with Defendant's motion for summary judgment under seal.  (Doc. Nos. 65 through 65-21, 74 through 74-40, 78 through 78-2.)  Defendant asserts that the exhibits it seeks to seal are Plaintiff's documents, and therefore it is unable "to articulate any kind of harm it would allegedly sustain if the information contained in th[ose] documents [were] disclosed." (Doc. Nos. 62 at 3–4; 77 at 3.)  Therefore, Defendant defers to Plaintiff's articulated reason to

---

[3] Judge Restrepo, in an opinion concurring in part and dissenting in part, concluded that the First Amendment right of public access extends to summary judgment materials.  See id. at 681–84. The Second and Fourth Circuits have held that the First Amendment right of public access extends to summary judgment materials.  See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).

support Defendant's unopposed motion to file documents under seal.  (Doc. Nos. 62 at 4; 77 at 3.)  Plaintiff argues that the Court should seal the exhibits because they reflect "sensitive technical, commercial, and business information, including proprietary product details, internal testing, engineering analyses, and supplier communications."  (Doc. No. 72 ¶ 7.)  Plaintiff maintains that disclosure of the documents would "risk competitive harm and compromise legitimate privacy interests."  (Id.)  Both parties agree that their exhibits submitted in connection with a motion for summary judgment are judicial records to which the public has a common law right of access.  (Doc. Nos. 62 at 2; 72 ¶ 4; 77 at 2.)

The Court identifies six (6) categories of documents into which Defendant's and Plaintiff's exhibits fall: (1) PowerPoint presentations; (2) reports; (3) agreements and contracts; (4) purchase orders and pricing documents; (5) letters; and (6) email threads.  First, the PowerPoint presentations—docket numbers 65 (pages 1-29),[4] 65-8, and 74-5—[5]concern details and analyses of the eight (8) C2 Compressor failures and the two (2) C3 Compressor failures.  The PowerPoint presentation exhibits also contain images of the Compressors, excerpts from Siemens' root cause analysis reports attempting to determine the root cause of the C2 and C3 Compressor failures, and details of work performed by the Compressors.  Second, the report exhibits—docket numbers 65-5, 65-11, 65-12, 74-1, 74-6, 74-7, 74-8 and 74-20—[6]are comprised

---

[4]  The Court notes that docket number 65 contains two exhibits: (1) Exhibit 1, the PowerPoint presentation (Doc. Nos. 65 at 1–29; 63-3); and (2) Exhibit 13, a purchase order, price quote, and contract between Plaintiff and Defendant (Doc. Nos. 65 at 30–35; 63-13).

[5]  Docket numbers 65 (pages 1-29), 65-8, and 74-5 respectively match exhibits 1 and 32 filed with Defendant's first motion to seal and Plaintiff's exhibit 20.  (Doc. Nos. 65 at 1-29; 65-8; 74-5.)

[6]  Docket numbers 65-5, 65-11, and 65-12 correspond respectively to exhibits 28, 40, and 41 filed with Defendant's first motion to seal exhibits (Doc. Nos. 65-5, 65-11, 65-12), whereas docket numbers 74-1, 74-6, 74-7, 74-8 and 74-20 correspond respectively to exhibits 11, 19, 21,

of the following reports: Siemens' root cause analysis report attempting to determine the root cause of the C2 Compressor failures; an internal report written by Plaintiff describing the seal failures and providing graphs of compressor vibrations and photographs of broken Seals; a technical investigative report prepared by the company Clyde & Co. Canada LLP investigating the failures of the Compressors and Seals; a rotor refurbishment report of high speed balance test results prepared by Siemens; a supplement to Siemens' root cause analysis report attempting to determine the root cause of the C3 Compressor failures; an examination of seal set materials report prepared by IMR Test Labs; and a seal failure investigation report prepared by the company AST Turbo.[7]  See (Doc. Nos. 65-5, 65-11, 65-12, 74-1, 74-6–74-8, 74-20).

Third, the agreements and contracts exhibits—docket numbers 65-1, 65-14, 65-16, 65-21, 74-3, 74-17, 74-21, and 74-40—[8]include evidence of the following: a butyl rubber manufacturing agreement;[9] a settlement and mutual release agreement between Siemens and Plaintiff; a settlement and mutual release agreement between Plaintiff and the insurance

---

22, 23, and 39 filed with Plaintiff's motion to seal exhibits (Doc. Nos. 74-1, 74-6, 74-7, 74-8, 74-20).

[7] Docket numbers 65-5 and 74-6 are duplicates of the Siemens root cause analysis report, and 65-12 and 74-20 are duplicates of the Clyde & Co. Canada LLP technical investigative report. Compare (Doc No. 65-5 with Doc. No. 74-6); compare also (Doc. No. 65-12 with Doc. No. 74-20).

[8] Docket numbers 65-1, 65-14, 65-16, 65-20, and 65-21 align with exhibits 22, 43, 46, and 56 filed in connection with Defendant's first motion to seal. (Doc. Nos. 65-1, 65-14, 65-16, 65-20, 65-21.)  Plaintiff's exhibits 17, 36, 40, and 62 respectively match docket numbers 74-3, 74-17, 74-21, and 74-40. (Doc. Nos. 74-3, 74-17, 74-21, 74-40.)

[9] Docket numbers 65-1 and 74-3 are duplicates of the butyl rubber manufacturing agreement. Compare (Doc No. 65-1 with Doc. No. 74-3).

company Allianz;[10] an assignment of claims agreement between Arlanxeo Singapore, Arlanxeo Switzerland, and Plaintiff; a settlement and mutual release agreement between Plaintiff and the company Dresser-Rand Canada, ULC; and Kaydon Corporation's terms and conditions of sale.[11] (Doc. Nos. 65-1, 65-14, 65-16, 65-20, 65-21, 74-3, 74-17, 74-21, 74-40.)  Fourth, the parties seek to seal purchase orders and pricing documents—docket numbers 65 (pages 30–35), 65-17, 65-18, 65-19, 65-20, 74-22, 74-23, 74-25, 74-26, 74-27, 74-28, 74-29, 74-30, 74-32, 74-33, 74-34, 74-35, and 78-2[12] (pages 14–16).[13]  Those exhibits include information on Defendant's price for emergency repairs and replacements of Seals, Plaintiff's purchase history of Seals, Plaintiff's general terms of purchase, and Plaintiff's costs incurred.  (Doc. Nos. 65 at 30–35; 65-17 through 65-20; 74-22; 74-23; 74-25 through 74-30; 74-32 through 74-35; 78-2 at 14–16.)

Fifth, the parties also seek to seal docket numbers 65-2 and 74-19.  Docket number 65-2 is a demand for payment letter from Arlanxeo Singapore addressed to Plaintiff (Doc. No. 65-2),

---

[10]  Docket numbers 65-16 and 74-21 are duplicates of the settlement and mutual release agreement between Plaintiff and the insurance company Allianz.  Compare (Doc No. 65-16 with Doc. No. 74-21).

[11]  Docket numbers 65-20 and 74-40 are duplicates of Kaydon Corporation's terms and conditions of sale.  Compare (Doc No. 65-20 with Doc. No. 74-40).

[12]  The Court notes that docket number 78-2 contains two exhibits: (1) Exhibit C, an email thread between Arlanxeo and Lanxess (Doc. Nos. 78-2 at 1–13); and (2) Exhibit F, a January 2020, repair pricing document providing a price quote from Defendant to Plaintiff (Doc. Nos. 65 at 30–35; 63-13).

[13]  Docket numbers 65 (pages 30–35), 65-17, 65-18, 65-19, and 65-20 correspond respectively to exhibits 13, 47, 48, 49, and 51, which were filed with Defendant's first motion to seal exhibits. (Doc. Nos. 65 at 30–35; 65-17 through 65-20.)  Docket numbers 74-22, 74-23, 74-25, 74-26, 74-27, 74-28, 74-29, 74-30, 74-32, 74-33, 74-34, and 74-35 respectively match exhibits 42, 43, 45, 46, 47, 48, 49, 50, 52, 53, 54, and 55, which were filed with Plaintiff's motion to seal exhibits. (Doc. Nos. 74-22, 74-23, 74-25 through 74-30, 74-32 through 74-35.)  Finally, Exhibit F, which was filed by Defendant with its second motion to seal, was docketed as docket number 78-2 pages 14–16.  (Doc. No. 78-2 at 14–16.)

and docket number 74-19 is a letter from Plaintiff to Siemens discussing previous letters from Siemens, in which Siemens demands payment for work completed on the C2 and C3 Compressors in the years 2019 and 2020 (Doc. No. 74-19).  Lastly, the email thread exhibits—docket numbers 65-3, 65-4, 65-6, 65-7, 65-9, 65-10, 65-13, 65-15, 74, 74-2, 74-9, 74-10, 74-11, 74-12, 74-13, 74-14, 74-15, 74-16, 74-18, 74-24, 74-31, 74-36, 74-37, 74-38, 74-39, 78, 78-1, 78-2 (pages 1–13)—[14]contain emails between the following entities: Plaintiff and Defendant; Plaintiff and Siemens; Plaintiff and AESSeal; Plaintiff, Lanxess, Siemens, and Forsthoffer Associates, Inc.; Defendant and Defendant's parent company SKF USA, Inc.; and Plaintiff's employees among each other.  (Doc. Nos. 65-3; 65-4; 65-6; 65-7; 65-9; 65-10; 65-13; 65-15; 74; 74-2; 74-9 through 74-16; 74-18; 74-24; 74-31; 74-36 through 74-39; 78; 78-1; 78-2 at 1–13.)  The subject matter of the above exhibits include: the failures of the C2 and C3 Compressors; demands for, and implementation of, repairs and replacements for the Seals; cost of repairs and replacements for the Seals; investigation into, and assertions of, the cause of the compressor failures; demands for payment; and proposals for upgrades to the design of the Seals.  (Id.)

Upon careful review of all sixty-eight (68) exhibits, the Court is unpersuaded that Defendant or Plaintiff have met their burden to demonstrate that their interests in secrecy outweigh the presumption of public access to judicial records as to all exhibits, as required by

---

[14] Docket numbers 65-3, 65-4, 65-6, 65-7, 65-9, 65-10, 65-13, and 65-15 correspond respectively to exhibits 25, 27, 29, 31, 33, 35, 42, and 44 that were filed with Defendant's first motion to seal exhibits.  (Doc. Nos. 65-3, 65-4, 65-6, 65-7, 65-9, 65-10, 65-13, 65-15.)  Docket numbers 74, 74-2, 74-9, 74-10, 74-11, 74-12, 74-13, 74-14, 74-15, 74-16, 74-18, 74-24, 74-31, 74-36, 74-37, 74-38, and 74-39 correspond respectively to exhibits 7, 13, 24, 27, 28, 29, 30, 31, 32, 33, 37, 44, 51, 57, 58, 59, and 60 that were filed with Plaintiff's motion to seal exhibits.  (Doc. Nos. 74, 74-2, 74-9 through 74-16, 74-18, 74-24, 74-31, 74-36 through 74-39.)  Finally, Exhibits A, B, and C, which were filed by Defendant with its second motion to seal, were docketed as docket numbers 78, 78-1, and 78-2 (pages 1–13).  (Doc. Nos. 78; 78-1; 78-2 at 1–13.)

Avandia.  Assuming that the exhibits contain "the kind of information that courts will protect[,]" Defendant and Plaintiff have failed to demonstrate that disclosure of that information "will work a clearly defined and serious injury."  See Avandia, 924 F.3d at 672.  As recounted supra, Plaintiff's reason for sealing, to which Defendant defers, is that disclosure would "risk competitive harm" and "compromise legitimate privacy interests."  (Doc. No. 72 ¶ 7.)  That reason, however, is insufficient because it is a generalized claim that lacks specific examples or articulated reasoning required to "overcome the strong presumption [of openness]."  See id. at 676; see also LEAP Sys., Inc. v. MoneyTrax, Inc., 638 F.3d 216, 222 (3d Cir. 2011) (concluding that an assertion that disclosure of secretive business information would place a party at a "tactical disadvantage" is insufficient on its own to demonstrate "a strong interest in maintaining confidentiality" (citing In re Cendant Corp., 260 F.3d at 194)); In re Application of Storag Etzel GmbH for an Ord., Pursuant to 28 U.S.C. § 1782, to Obtain Discovery for Use in a Foreign Proceeding, No. 19-mc-00209, 2020 WL 2949742, *22 (D. Del. Mar. 25, 2020), report and recommendation adopted in part sub nom. In re Storag Etzel GmbH, No. 19-mc-00209, 2020 WL 2915781 (D. Del. June 3, 2020) (denying request to seal because, although there may be "specific technical or commercial information that would cause palpable commercial harm to either party, no such harm has been isolated or demonstrated by either party").

Other cases contemplating sealing based on competitive harm under the Avandia standard feature the moving party providing a declaration detailing the specific and particularized harm that would result from public disclosure.  See, e.g., Genentech, Inc. v. Amgen, Inc., No. 17-cv-1407, 2020 WL 9432700, at *5 (D. Del. Sept. 2, 2020), report and recommendation adopted, No. 17-cv-1407, 2020 WL 9432702 (D. Del. Oct. 1, 2020) (noting that the parties submitted "numerous, lengthy, and detailed factual declarations by highly placed and expert employees

11

within their respective companies" which demonstrated "how the information contained in their proposed sealings and redactions, if disclosed, would visit upon them present commercial and competitive harm"); In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig., No. MDL 2875, 2022 WL 974208, at *6 (D.N.J. Feb. 10, 2022) (granting sealing of certain exhibits based on the submitted declarations that detail proprietary specifications and testing methods that would lead to competitive harm if disclosed). Here, the parties provide no declaration detailing the specific, particularized harm to which Plaintiff would be subjected upon public disclosure of the exhibits, a showing that is required to overcome the presumption of public access to judicial records. See Am. Bd. of Internal Med. v. Salas Rushford, No. 14-cv-06428, 2025 WL 957698, at *7 (D.N.J. Mar. 31, 2025) (denying sealing where the plaintiff offered merely a "broad allegation of harm, bereft of specific examples or articulated reasoning, which [was] insufficient to warrant sealing" (cleaned up)(internal quotations omitted)). Accordingly, the parties have failed to overcome the presumptive right of public access to judicial records, and thus the Court will direct the Clerk of Court to unseal the exhibits contained at docket numbers 65 through 65-21, 74 through 74-40, and 78 through 78-2 that were filed provisionally under seal by Defendant and Plaintiff.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Defendant's unopposed motions to seal (Doc. Nos. 62, 77) and Plaintiff's unopposed motion to seal (Doc. No. 72). An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania